# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

NUIQSUT TRILATERAL, INC.,

                   Plaintiff,

     v.

DOUG BURGUM, in his official
capacity as Secretary of the Interior,
*et al.*,

                Defendants.

Case No. 3:26-cv-00098-SLG

## <u>ORDER ON MOTION FOR PRELIMINARY INJUNCTION</u>

Before the Court at Docket 12 is Plaintiff Nuiqsut Trilateral, Inc.'s Motion for Preliminary Injunction. Defendants Secretary of the Interior Doug Burgum, Deputy Secretary of the Interior Katharine MacGregor, the United States Department of the Interior (the "Department"), Acting Director of the Bureau of Land Management Bill Groffy, Alaska State Director of the Bureau of Land Management Kevin Pendergast, and the United States Bureau of Land Management ("BLM") responded in opposition at Docket 21, to which Plaintiff replied at Docket 36. At the Court's request, the parties filed supplemental briefing addressing the Ninth Circuit's legal standard for preliminary injunctions at Dockets 39 and 40. Oral argument on the motion was held on March 12, 2026.

## BACKGROUND

The National Petroleum Reserve–Alaska ("NPR-A"), on Alaska's North Slope, consists of 23.6 million acres and is the nation's largest single unit of public

land.[1] Established as the Naval Petroleum Reserve in 1923, the NPR-A was renamed and its management authority was transferred to the Secretary of the Interior in 1976 by the Naval Petroleum Reserves Production Act ("NPRPA"), 42 U.S.C. § 6501 *et seq.*[2] In 1980, the NPRPA was amended by an appropriations rider mandating that "[t]he Secretary [of the Interior] shall conduct an expeditious program of competitive leasing of oil and gas in the Reserve in accordance with this Act."[3] The NPRPA also directs the Secretary to "assume all responsibilities" for the "protection of environmental, fish and wildlife, and historical or scenic values."[4] To that end, the NPRPA requires that "[a]ctivities undertaken pursuant to [the NPRPA] shall include or provide for such conditions, restrictions, and prohibitions as the Secretary deems necessary or appropriate to mitigate reasonably foreseeable and significantly adverse effects on the surface resources of the [NPR-A]."[5]

Certain lands within the NPR-A, including the Teshekpuk Lake Special Area ("TLSA"), have been designated as special areas and are subject to heightened

---

[1] *N. Alaska Env't Ctr. v. Kempthorne*, 457 F.3d 969, 973 (9th Cir. 2006).

[2] H.R. Rep. No. 94-81, at 5-6, 8-9 (1975); Naval Petroleum Reserves Production Act, Pub. L. No. 94-258, 90 Stat. 303 (1976) (codified at 42 U.S.C. § 6503(a)).

[3] Pub. L. No. 96-514, 94 Stat. 2957, 2964 (1980) (codified at 42 U.S.C. § 6506a).

[4] 42 U.S.C. § 6503(b).

[5] *Id.* § 6506a(b).

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 2 of 26

Case 3:26-cv-00098-SLG    Document 42    Filed 03/16/26    Page 2 of 26

protection under the NPRPA.[6]  Specifically, the NPRPA provides that

> [a]ny exploration within the Utukok River, the Teshekpuk Lake areas, and other areas designated by the Secretary of the Interior containing any significant subsistence, recreational, fish and wildlife, or historical or scenic value, shall be conducted in a manner which will assure the maximum protection of such surface values to the extent consistent with the requirements of this Act for the exploration of the reserve.[7]

The TLSA consists of approximately 3.65 million acres within the NPR-A.[8]

BLM manages the NPR-A through Integrated Activity Plans ("IAPs"), which determine which lands are available for leasing and establish mitigation measures and stipulations governing development.[9]  BLM then analyzes an IAP through an Environmental Impact Statement ("EIS"), then adopts the final IAP in a Record of Decision ("ROD").[10]  BLM has issued IAPs in RODs in 2013, 2020, 2022, and 2025.

Earlier IAPs generally restricted development around the TLSA and large portions of the NPR-A[11]—most notably, the 2013 IAP closed roughly half the NPR-A to leasing.[12]  The 2020 IAP significantly expanded leasing availability to about

---

[6] *Id.* § 6504(a).

[7] *Id.*

[8] Docket 12-2 (Right of Way) at 3.

[9] *See N. Alaska Env't Ctr.*, 457 F.3d at 973.

[10] *See Nat'l Audubon Soc'y v. Haaland*, Case No. 3:20-cv-00206-SLG, 2023 WL 5984204, at *1 (D. Alaska Sept. 14, 2023).

[11] *See* Designation of Additions to Special Areas in National Petroleum Reserve-Alaska, 64 Fed. Reg. 16747-03 (Apr. 6, 1999); Northeast NPR-A Supp. IAP ROD, Bureau of Land Mgmt., U.S. Dep't of the Interior (July 2008).

[12] NPR-A IAP ROD, Bureau of Land Mgmt., U.S. Dep't of the Interior (Feb. 2013) (2013 IAP ROD).

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 3 of 26

Case 3:26-cv-00098-SLG   Document 42   Filed 03/16/26   Page 3 of 26

18.6 million acres, including most of the TLSA,[13] but the 2022 IAP largely reverted to the more restrictive 2013 framework.[14]

In March 2023, BLM approved the Willow Master Development Plan, a large oil and gas project in the NPR-A. The Willow Master Development Plan included Mitigation Measure 27 ("MM27"), which provides in relevant part:

> BLM will develop compensatory mitigation that provides durable, long-term protection for the Teshekpuk Caribou Herd to fully offset impacts of the project on that Herd, to include protecting the surface area of Teshekpuk Lake, a buffer along all shores of the lake, and the K-10 Caribou Movement Corridors/K-16 Deferral Areas (under Alternative E in the 2020 National Petroleum Reserve in Alaska Integrated Activity Plan Final Environmental Impact Statement) using existing statutory, management or administrative authorities, with a focus on restricting future leasing or surface development in those areas.[15]

To implement this requirement, in December 2024, BLM issued a conservation right-of-way ("ROW") to Plaintiff here, Nuiqsut Trilateral, Inc., encompassing approximately one million acres of key habitat for the Teshekpuk Caribou Herd within the TLSA. Nuiqsut Trilateral, Inc. is a nonprofit organization formed by Nuiqsut's city government, tribe, and village corporation.[16] The ROW states its purpose is to "offset the impacts on the Herd from the Willow project by providing durable and long-term protection for the Herd by prohibiting certain activities and

---

[13] NPR-A IAP ROD, Bureau of Land Mgmt., U.S. Dep't of the Interior (Dec. 2020) (2020 IAP ROD).

[14] NPR-A IAP ROD, Bureau of Land Mgmt., U.S. Dep't of the Interior (Apr. 2022) (2022 IAP ROD).

[15] Willow Master Dev. Plan, Supp. EIS ROD, Bureau of Land Mgmt., U.S. Dep't of the Interior, App. A (Mar. 2023) (Willow SEIS ROD).

[16] Docket 12-2 (Right of Way).

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 4 of 26
Case 3:26-cv-00098-SLG    Document 42    Filed 03/16/26    Page 4 of 26

facilities within the Protected Property for the benefit of the Herd and the Herd's most important habitat."[17]   The ROW states that the Department's authority to grant the right-of-way is 42 U.S.C. § 6502, which provides in relevant part that "the Secretary is authorized to . . . grant such rights-of-way, licenses, and permits as may be necessary to cany out his responsibilities under" the NPRPA.[18]   The ROW allows Plaintiffs to prohibit the "[i]ssuance of new oil and gas leases" and "surface and subsurface exploration development, mining, or extraction of oil, gas, or other mineral resources."[19]   And it conveys to Plaintiff "[t]he right to take legal and any other lawful action to prevent any activity on or use of the Protected Property that is prohibited by or inconsistent with the purpose of [the] Grant."[20]   The ROW provides that it "shall continue and remain in effect throughout the life of construction and operation of the Willow Project."[21]   It also provides that if an applicable federal law "imposes affirmative obligations on the United States which, if complied with by the United States, would be a violation of a term of this [ROW]," the United States shall give at least 30 days' notice to Plaintiff of the United States' intent to comply with that law."[22]

---

[17] Docket 12-2 at 3.

[18] Docket 12-2 at 3.

[19] Docket 12-2 at 5, 7.

[20] Docket 12-2 at 5.

[21] Docket 12-2 at 4.

[22] Docket 12-2 at 8.

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 5 of 26

Case 3:26-cv-00098-SLG   Document 42   Filed 03/16/26   Page 5 of 26

On July 4, 2025, Congress passed the One Big Beautiful Bill Act ("OBBBA"), which includes a provision that the Secretary "shall expeditiously restore and resume oil and gas lease sales under the Program" established in the NPR-A "for domestic energy production and Federal revenue in the areas designated for oil and gas leasing as described in" the 2020 IAP EIS and the 2020 IAP ROD.[23] The OBBBA specifically instructs the Secretary to "conduct not fewer than 4 lease sales area-wide under the oil and gas program by not later than 10 years after the date of enactment of this Act," each of which "shall offer not fewer than 4,000,000 acres."[24] The OBBBA does not contain any mention of the ROW. More recently, on December 5, 2025, Congress, acting pursuant to the Congressional Review Act, nullified the 2022 IAP ROD.[25]

On December 19, 2025, the Department of the Interior delivered a "Right of Way Cancellation" letter to Plaintiff ("ROW Cancellation Notice"), which purported to immediately and unilaterally cancel the ROW.[26] The ROW Cancellation Notice states that the Department had determined that there were "serious and fundamental legal deficiencies" with the ROW, and that it was exercising the Secretary's "inherent authority, under his general managerial power over public

---

[23] Pub. L. No. 119-21, § 50105(a-b), 139 Stat. 72, 143.

[24] *Id.* § 50104(b), 139 Stat. 72, 142-43.

[25] 5 U.S.C. § 801(f); Pub. L. No. 119-47, 139 Stat. 696.

[26] Docket 12-3 (ROW Cancellation Notice) at 2-10.

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 6 of 26

lands, to cancel authorizations issued in violation of law."[27]  The ROW Cancellation Notice stated that the ROW was "at odds with the text and purpose of the NPRPA," constituted an improper sub-delegation of federal authority, and cancellation was necessary to ensure compliance with the OBBBA.[28]  No advance notice of the Department's decision to cancel the ROW was given to Plaintiff before it received the December 19, 2025 letter.[29]  Shortly thereafter, on December 22, 2025, BLM issued the 2025 IAP opening approximately 18.6 million acres, or 82 percent, of the NPR-A to oil and gas leasing.[30]  "Of the 18.6 million acres, approximately 132,000 acres in the northeastern part of the [NPR-A in the TLSA] would not be available for leasing until ten years after [the 2025 IAP ROD was] signed, when a ten-year deferral established by [the 2025 IAP ROD] in the [TLSA] expires." [31]

On January 28, 2026, Plaintiff filed this action in which it seeks an order vacating the ROW Cancellation Notice.[32]  On February 11, 2026, BLM published a Notice of Intent to hold a lease sale on March 18, 2026 ("Notice of Sale") involving approximately 5.5 million acres of NPR-A land, including tracts within the ROW.[33]

---

[27] Docket 12-3 at 5 (citing *Boesche v. Udall*, 373 U.S. 472, 476-77 (1963)).

[28] Docket 12-3 at 7-8.

[29] Docket 12-1 at 21.

[30] Docket 21-1 (2025 IAP ROD) at 11.

[31] Docket 21-1 at 11.

[32] Docket 1 at 42, ¶ 2.

[33] Docket 12-4 (Detailed Statement of Sale).

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 7 of 26
Case 3:26-cv-00098-SLG   Document 42   Filed 03/16/26   Page 7 of 26

On February 20, 2026, Plaintiff moved for preliminary injunctive relief; it asks the Court to stay the December 19, 2025 ROW Cancellation Notice pending resolution of this case.[34]

## JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the [Administrative Procedure Act, 5 U.S.C. §§ 701-706,] of its own force may serve as a jurisdictional predicate."[35]

## LEGAL STANDARD

In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.[36] When, as here, the government is a party to the action, the balance of equities factor and the public interest factor merge.[37] The Supreme Court in *Winter* characterized "injunctive relief as an extraordinary remedy that may only be

---

[34] Docket 12-7 (Proposed Order) at 2.

[35] *Califano v. Sanders*, 430 U.S. 99, 105 (1977).

[36] 555 U.S. 7, 20 (2008).

[37] *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 8 of 26

Case 3:26-cv-00098-SLG    Document 42    Filed 03/16/26    Page 8 of 26

awarded upon a clear showing that the plaintiff is entitled to such relief."[38]

Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that its "serious questions" approach to preliminary injunctions was still valid "when applied as part of the four-element *Winter* test."[39] Under that approach, if a plaintiff shows "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor.'"[40] Serious questions "need not promise a certainty of success, nor even present a probability of success, but must involve a fair chance of success on the merits."[41] All four *Winter* elements must still be satisfied under this approach.[42]

Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."[43]

---

[38] *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

[39] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011).

[40] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

[41] *Id.* (internal quotation marks omitted) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc)).

[42] *See All. for the Wild Rockies*, 632 F.3d at 1135 ("Of course, plaintiffs must also satisfy the other *Winter* factors.").

[43] *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987).

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 9 of 26

**DISCUSSION**

Upon consideration of the parties' briefing and the record in this case, the Court finds as follows:

### I. Irreparable Harm

The Court first considers whether Plaintiff has demonstrated that it is likely to suffer irreparable harm in the absence of preliminary injunctive relief. A plaintiff "must demonstrate that in the absence of a preliminary injunction, 'the [plaintiff] is likely to suffer irreparable harm before a decision on the merits can be rendered.'"[44] The Supreme Court has emphasized that "simply showing some 'possibility of irreparable injury'" is insufficient.[45] "Speculative injury does not constitute irreparable injury . . . . [A] plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."[46] Moreover, the injury must be irreparable.[47]

---

[44] *Winter*, 555 U.S. at 22 (quoting 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (2d ed. 1995)).

[45] *Nken v. Holder*, 556 U.S. 418, 434–35 (2009) (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)). As the Supreme Court has explained, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek*, 520 U.S. at 972).

[46] *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis omitted) (first citing *Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984); and then citing *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980)).

[47] *See L.A. Mem'l Coliseum Comm'n*, 634 F.2d at 1202 (holding that injury of lost revenues was not irreparable).

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 10 of 26

As an initial matter, Defendants argue that Plaintiff will not suffer irreparable harm because "merely conducting an oil and gas lease sale does not result in the irreparable harm to the environment necessary for granting a preliminary injunction."[48]  But that contention is not responsive to the irreparable harm that Plaintiff has asserted.  Plaintiff's request for preliminary injunctive relief does not arise from an alleged environmental injury if lands encompassed within the ROW are leased.  Rather, Plaintiff asserts that it is being irreparably harmed by the ROW Cancellation Notice itself, because the purported cancellation of its ROW clouds Plaintiff's property rights and deprives Plaintiff of its constitutionally protected interest in that ROW.[49] Because Plaintiff's asserted injury is the impairment of its property interest in the ROW, Plaintiff need not demonstrate irreparable environmental harm is likely before a final judgment on the merits in this case in order to establish irreparable injury for purposes of preliminary injunctive relief.

Citing *Gwich'in Steering Committee v. Bernhardt*, Defendants maintain that an injury resembling a "cloud on title" is not irreparable because the Court has the authority to rescind leases issued during the pendency of the litigation if Plaintiff ultimately succeeds on the merits.[50]  At oral argument, the parties agreed that this Court has the authority to rescind leases if they are issued contrary to law.  But

---

[48] Docket 21 at 19 (citations omitted).

[49] Docket 12-1 at 41-44.

[50] Docket 21 at 19-20 (citing Docket 21-1 at 31-32); *Gwich'in Steering Committee v. Bernhardt*, Case No. 3:20-cv-00204-SLG, 2021 WL 46703, at *9 (D. Alaska Jan. 5, 2021).

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 11 of 26
Case 3:26-cv-00098-SLG     Document 42     Filed 03/16/26     Page 11 of 26

relief through lease recissions would not remedy the injury to Plaintiff's property interest caused by the purported cancellation of the ROW itself.  In *Gwich'in*, the Court determined that the alleged environmental harms from lease issuance were not irreparable because the ground-disturbing activities at issue would require further agency approval and were unlikely to occur before a final ruling on the merits.[51]  Here, by contrast, the injury is the loss of Plaintiff's real property rights— a harm that Plaintiff has already experienced and continues to experience.[52]  Such a loss "constitutes an irreparable harm for which monetary damages are an inadequate remedy."[53]

Defendants assert that if the ROW Cancellation Notice is invalidated, any injury arising from the lease sales could be remedied by future recissions of any leases because "the filing of this suit acts as a lis pendens on the lease sale."[54] However, this contention too is difficult to reconcile with the Notice of Sale, which was published after this action was filed and does not reference the ROW, the ROW Cancellation Notice, or this litigation.[55]  If the ROW Cancellation Notice is not stayed and leases are issued on tracts that fall within the ROW, it would create

---

[51] Case No. 3:20-cv-00204-SLG, 2021 WL 46703, at *8 (D. Alaska Jan. 5, 2021).

[52] *See, e.g.*, Docket 12-1 at 12, 40.

[53] *Saticoy Bay LLC Series 452 Crocus Hill v. Quality Loan Serv. Corp.*, 826 F. App'x 610, 614 (9th Cir. 2020) (citation omitted).

[54] Docket 21 at 19-20 (citing *N. Slope Borough v. Andrus*, 486 F. Supp. 326, 331 (D.D.C. 1979)).

[55] *See* Docket 12-3.

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 12 of 26

Case 3:26-cv-00098-SLG    Document 42    Filed 03/16/26    Page 12 of 26

substantial uncertainty and confusion regarding competing property interests that would affect not only Plaintiff, but also each of the lessees of those tracts, none of whom are parties to this litigation.[56]  Requiring Plaintiff to assert its competing property interest in the ROW tracts by seeking retroactive lease rescissions constitutes an irreparable harm that is entirely avoided  if the ROW Cancellation Notice is stayed during the pendency of this proceeding.[57]

For the foregoing reasons, the Court finds that Plaintiff has clearly demonstrated that it is likely to suffer irreparable harm in the absence of preliminary injunctive relief.

## II. Likelihood of Success on the Merits

Plaintiff asserts several claims against Defendants and contends that it is likely to succeed on the merits of each.[58]  For purposes of the present motion, the Court addresses only the likelihood of success of Plaintiff's claim under the Administrative Procedure Act ("APA") that the ROW Cancellation Notice was issued in excess of the Secretary's statutory authority.[59]

Under § 706 of the APA, a reviewing court must "hold unlawful and set aside

---

[56] Docket 12-1 at 43-44.

[57] *See United States v. Alaska*, 608 F. Supp. 3d 802, 810 (D. Alaska 2022) (finding irreparable harm where conflicting orders would cause "uncertainty and confusion" and dissuade a federally qualified user from legal fishing opportunities or may cause a non-federally qualified user to harvest fish in violation of federal law).

[58] Docket 12-1 at 24; Docket 36 at 5.

[59] Docket 12-1 at 40-41; Docket 36 at 12-14.

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 13 of 26

Case 3:26-cv-00098-SLG     Document 42     Filed 03/16/26     Page 13 of 26

agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."[60] The parties do not dispute that the Department possesses only the authority that it has been granted by Congress.[61] Indeed, "an agency literally has no power to act . . . unless and until Congress confers power upon it."[62] The parties also do not dispute that while the NPRPA expressly authorizes the Secretary to grant rights-of-way, it does not expressly authorize the Secretary to unilaterally cancel those rights-of-way.[63] The dispute here concerns whether, as stated in the ROW Cancellation Notice, "[t]he Secretary has inherent authority, under his general managerial power over public lands, to cancel authorizations [that he later determines were] issued in violation of law."[64]

Defendants assert the Secretary's inherent authority arises from 43 U.S.C. § 2, which empowers the Secretary to "perform all executive duties appertaining to the surveying and sale of the public lands of the United States, or in anywise respecting such public lands."[65] Defendants assert that this provision "vest[s] the Secretary with general managerial powers over the public lands," including the

---

[60] 5 U.S.C. § 706(2)(C).

[61] Docket 12-1 at 34; Docket 21 at 27.

[62] *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 357 (1986).

[63] Docket 12-1 at 34; Docket 21 at 29-31.

[64] Docket 12-3 at 5 (citing *Boesche v. Udall*, 373 U.S. 472 (1963)).

[65] Docket 21 at 26 (quoting 43 U.S.C. § 2).

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 14 of 26

Case 3:26-cv-00098-SLG    Document 42    Filed 03/16/26    Page 14 of 26

inherent authority to cancel the ROW.[66]  Defendants primarily rely on *Boesche v. Udall* to support their proposition that the Secretary's general managerial powers allow "the Secretary to 'correct [the] errors' of her predecessor that have become apparent through additional review and evolved Congressional direction (or case law)."[67]  Plaintiff asserts the Department cannot rely on generalized "inherent authority" to revoke the property rights it previously conveyed.[68]  And Plaintiff takes issue with the Department's reliance on *Boesche*, asserting that the decision is "strikingly narrow" and that the Supreme Court limited its holding in that case to the Secretary's authority to cancel leases issued under a different statute based on "administrative errors."[69]

In *Boesche*, the Secretary of the Interior issued a noncompetitive oil and gas lease, pursuant to Section 17 of the Mineral Leasing Act ("MLA"), to the petitioner for an 80-acre tract of public land in Oklahoma.[70]  At the time the petitioner applied, another applicant had already applied for a lease on an adjoining 40-acre tract, but had not yet received a lease.[71]  The Department's regulations required noncompetitive lease applications to cover at least 640 acres unless the

---

[66] Docket 21 at 26 (quoting *Boesche*, 373 U.S. at 478).

[67] Docket 21 at 26 (quoting *Boesche*, 373 U.S. at 478).

[68] Docket 12-1 at 25-28.

[69] Docket 12-1 at 25; *see also* Docket 36 at 5-8.

[70] *Boesche*, 373 U.S. at 473-74.

[71] *Id.* at 474.

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 15 of 26

surrounding land was unavailable for leasing. The Department later determined that the petitioner's application was invalid because he had failed to include the adjoining available tract in his application. After two competing applicants successfully appealed the rejection of their application, the Secretary cancelled the petitioner's lease and directed that a lease instead be issued to the competing applicants for the entire acreage.[72]

The Supreme Court upheld the lease cancellation, reasoning that "the Secretary, under his general powers of management over the public lands, had authority to cancel this lease administratively for invalidity at its inception, unless such authority was withdrawn by the Mineral Leasing Act."[73] However, the Court emphasized that it "sanction[ed] no broader rule than is called for by the exigencies of the general situation and the circumstances of this particular case."[74] The Court further made clear that its decision does "not open the door to administrative abuses," because the decision only held that the Secretary has "the power to correct administrative errors of the sort involved here by cancellation of the leases in proceedings timely initiated by competing applicants for the same land."[75] Moreover, the Supreme Court stressed the procedural protections that had been

---

[72] *Id.*

[73] *Id.* at 476.

[74] *Id.* at 485.

[75] *Id.*

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 16 of 26

Case 3:26-cv-00098-SLG    Document 42    Filed 03/16/26    Page 16 of 26

accorded to the petitioner in that case, including notice, full opportunity to be heard, administrative appeal as of right, and judicial review of the Secretary's final action.[76]

Here, the cancellation of the ROW is materially different from the cancellation of the lease in *Boesche*. First, the ROW Cancellation Notice did not arise from a proceeding initiated by a competing applicant for the same land under the MLA. Rather, the Department initiated the cancellation itself, asserting for the first time in December 2025 that the ROW it had issued in December 2024 based on the authority it had relied on at the time of issuance had now been reinterpreted to remove that authority.[77]

Second, the legal basis for canceling the lease in *Boesche* was a Department regulation that required noncompetitive lease applications to cover at least 640 acres unless the surrounding land was unavailable for leasing.[78] The validity of that regulation was not contested; nor was the petitioner's noncompliance with that regulation in dispute.[79] Here, by contrast, the legal basis for the ROW Cancellation Notice is hotly disputed and remains unresolved. The Secretary's cancellation of the ROW appears to be based on a new interpretation

---

[76] *Id.* at 485-86.

[77] Docket 12-3 at 5-7.

[78] *Id.* at 474.

[79] *Id.* at 484.

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 17 of 26

Case 3:26-cv-00098-SLG   Document 42   Filed 03/16/26   Page 17 of 26

of an existing statute; it does not appear to be the correction of a straightforward administrative error that was at issue in *Boesche*.[80]

Third, the reconsideration of the lease issuance in *Boesche* began almost immediately after the lease was issued; whereas here, the ROW remained in place for a full year before the Department changed its position.[81]  This delayed timing further suggests that the cancellation of the ROW was not a prompt correction of an administrative error, but instead a cancellation based on the Department's revised interpretation of the NPRPA.

These three key distinctions render *Boesche* distinguishable from the case at hand.  Defendants cite no other authority supporting the proposition that the Secretary possesses the inherent authority to revoke, at will, a right-of-way previously conveyed to a private party. Accordingly, the Court finds that Plaintiff has demonstrated at least a serious question going to the merits of whether the ROW Cancellation Notice exceeded the Secretary's authority.

Even if the Court agreed with Defendants that the Secretary has inherent authority to cancel a right-of-way issued in the NPR-A, Defendants would have to show that the ROW was issued in violation of law.  Defendants make three arguments to that regard.[82]

---

[80] *See Boesche*, 373 U.S. at 481.

[81] Docket 12-1 at 27.

[82] Docket 21 at 21-31.

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 18 of 26

Case 3:26-cv-00098-SLG    Document 42    Filed 03/16/26    Page 18 of 26

First, Defendants assert that the ROW is "inherently at odds with the text and purpose of the NPRPA because the ROW grants a third party the right to prohibit core activities directly related to the NPR-A's dominant use."[83] Defendants acknowledge that the NPRPA expressly authorizes the Secretary to "grant [] rights-of-way, licenses, and permits as may be necessary to carry out his responsibilities under [the NPRPA]."[84] However, Defendants contend that the Secretary is "only empowered to grant 'rights-of-way related to oil and gas activities'" and "cannot grant a right of way 'that is specifically intended to prohibit or otherwise hinder oil and gas activities in the NPR-A.'"[85] But as Plaintiff correctly highlights, the NPRPA is a dual-purpose statute.[86] It directs the Department to conduct a competitive oil and gas leasing program; but it also requires the Department, in multiple provisions, to protect surface values in the NPR-A.[87] Further, the NPRPA does not state that the Secretary may only issue rights-of-way for oil and gas activities but not for the protection of surface values. Given the Secretary's express authority to grant rights-of-way under the NPRPA "as may be necessary to carry out his responsibilities"—responsibilities that include the protection of surface

---

[83] Docket 21 at 23 (quoting Docket 12-3 at 6).

[84] Docket 21 at 23 (quoting 42 U.S.C. § 6502).

[85] Docket 21 at 22 (quoting Docket 12-3 (ROW Cancellation Notice) at 5-6).

[86] Docket 12-1 at 29.

[87] *See* 42 U.S.C. § 6503(b) ("protect[] environmental, fish and wildlife, and historical or scenic values"); 42 U.S.C. § 6506a(b) ("mitigate reasonably foreseeable and significantly adverse effects on the surface resources"); 42 U.S.C. § 6504(a) ("maximum protection" in special areas).

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 19 of 26
Case 3:26-cv-00098-SLG     Document 42     Filed 03/16/26     Page 19 of 26

values—the Court finds that Plaintiff has demonstrated that there are at least serious questions going to the merits on the Secretary's authority to issue a conservation right-of-way in the NPR-A.[88]

Second, Defendants assert that the cancellation of the ROW is necessary to comply with the OBBBA's directive to "expeditiously restore and resume oil and gas lease sales . . . in the areas designated for oil and gas leasing as described in" the 2020 IAP EIS and the 2022 IAP ROD.[89]  But this assertion is at odds with the Department's 2026 intended lease sale, as it does not offer every parcel designated for leasing in the 2020 IAP.[90]  Moreover, even if Congress had intended to direct the Secretary to offer for lease every acre so designated in the 2020 IAP ROD, the OBBBA was enacted after the ROW was issued.  Its directive cannot support Defendants' assertion that the December 2024 ROW was "issued in violation of law."[91]

Third, Defendants contend that the ROW constituted an unlawful sub-

---

[88] 42 U.S.C. §§ 6502; 6503(b).

[89] Docket 21 at 23-24 (quoting OBBBA §§ 50105(b), (d)).

[90] Docket 12-4 at 12.

[91] Docket 12-3 at 5 (citing *Boesche v. Udall*, 373 U.S. 472 (1963)); *see Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) ("Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent.").

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 20 of 26

delegation of the Department's enforcement powers.[92]  And yet the NPRPA expressly authorizes the issuance of rights-of-way in the NPR-A.[93]  The issuance of a right-of-way necessarily carries with it certain rights, including the ability to assert and enforce the rights associated with that property interest.  Therefore, the rights outlined in the ROW arise from the property interest conveyed by the ROW itself, and, if so construed, would not constitute an unlawful sub-delegation of federal authority.

Based on the foregoing, the Court finds that at a minimum, Plaintiff has shown that there are serious questions going to the merits of Plaintiff's APA claim that the Department exceeded its statutory authority when it cancelled the ROW. Accordingly, the Court does not address Plaintiff's constitutional or other APA claims for the purposes of preliminary injunctive relief.

### III. Balance of Equities and the Public Interest

Lastly, in light of Plaintiff's demonstration of both irreparable harm in the absence of preliminary injunctive relief and serious questions going to the merits, the Court considers whether the balance of equities tips sharply in Plaintiff's favor and the injunction is in the public interest.[94]  The government is a party to this

---

[92] Docket 21 at 27-28.

[93] 42 U.S.C. § 6502.

[94] *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011); *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 21 of 26

action; hence, these final two *Winter* factors merge.[95] In "balanc[ing] the competing claims of injury," a court "must consider the effect on each party of the granting or withholding of the requested relief."[96] "An injunction is a matter of equitable discretion," and "[t]he assignment of weight to particular harms is a matter for district courts to decide."[97]

Defendants point to the Court's consideration of these two merged factors in *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Management*[98] to assert that "Plaintiff falls short of its burden to show that the balance of the equities and public interest favor granting a preliminary injunction."[99] In *Sovereign Iñupiat*, the Court balanced the potential environmental harms from the one season of winter construction activities at issue against the economic and public-interest harms that would result if those activities were preliminarily enjoined.[100] The Court found that halting that winter construction would cause substantial economic harm to Nuiqsut residents and to the broader North Slope community because it would eliminate seasonal employment and delay the economic benefits associated with the Willow

---

[95] *Drakes Bay Oyster Co.*, 747 F.3d at 1092 (citing *Nken*, 556 U.S. at 435).

[96] *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987).

[97] *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir.2010).

[98] Case No. 3:23-cv-00058-SLG, 2023 WL 2759864, at *11-14 (D. Alaska Apr. 3, 2023).

[99] Docket 21 at 32.

[100] *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, Case No. 3:23-cv-00058-SLG, 2023 WL 2759864, at *12 (D. Alaska Apr. 3, 2023).

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 22 of 26

Project.[101]  To support this conclusion, the Court relied on numerous declarations filed by Intervenor-Defendants "showing that Nuiqsut residents are relying on the seasonal jobs and income associated with the Winter 2023 Construction Activities" and that "[i]f the Winter 2023 Construction Activities do not go forward, these economic harms would extend beyond Nuiqsut."[102] Against these concerns, the Court "consider[ed] the impact of the Winter 2023 Construction Activities to subsistence hunters" and found that "the record does not demonstrate that the construction of the gravel road extension and boat launch would be against the interest of most subsistence uses."[103] On balance, the Court concluded that "the economic harms, particularly to the residents of Nuiqsut and elsewhere on the North Slope, if Winter 2023 Construction Activities are enjoined, may outweigh any potential harm to subsistence hunters that construction may cause."[104]

Here, unlike in *Sovereign Iñupiat*, the record does not contain evidence indicating that staying the ROW Cancellation Notice would cause any, let alone substantial, economic harms to Nuiqsut residents or others.  In contrast, Plaintiff has demonstrated the considerable harm to Plaintiff in the absence of preliminary relief if the Court were to determine that the ROW Cancellation Notice was unlawful

---

[101] *Id.*

[102] *Id.*

[103] *Id.* at *13.

[104] *Id.* (citations omitted).

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 23 of 26

Case 3:26-cv-00098-SLG    Document 42    Filed 03/16/26    Page 23 of 26

after the Department had issued leases on tracts within the ROW and has demonstrated that the Department anticipates permitting exploration activities and offering leases on land within the ROW in the very near term.[105] The risk of overlapping and potentially irreconcilable government-issued property interests in the ROW area—and the resulting harm to Plaintiff and to the potential lessee whose rights may also be affected—is significant. Further, the public interest weighs against allowing the Government to unilaterally cancel the agreement it made with a private party without providing basic procedural protections, such as notice and an opportunity to respond.[106] Indeed, the ROW expressly accords Plaintiff a right to 30 days' notice if the Department has decided that an applicable federal law "imposes affirmative obligations on the United States which, if complied with, would violate a term of this [ROW].[107]

The Court also finds that the potential harm to Defendants appears minimal. Under the OBBBA, the Department has until July 2026 to conduct its first sale.[108] Other acreage within the NPR-A could be offered for lease before that date to replace the acreage rendered unavailable to lease by this preliminary injunction.

The Ninth Circuit has recognized that "[t]he purpose of a preliminary

---

[105] Docket 12-1 43-44 (citing Docket 12-3 at 10).

[106] Docket 12-1 at 40-41.

[107] Docket 12-2 at 8.

[108] Pub. L. No. 119-21, § 50105(c)(1), 139 Stat. 72, 142-43.

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 24 of 26

Case 3:26-cv-00098-SLG    Document 42    Filed 03/16/26    Page 24 of 26

injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits," and "[i]t often happens that this purpose is furthered by the status quo."[109]  Courts have also recognized the "substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'"[110]  Here, the Court concludes that the Plaintiff has demonstrated that the merged equities and public interest factors together tip sharply in favor of according Plaintiff preliminary injunctive relief.

### IV. Bond

Under Federal Rule of Civil Procedure 65(c), the Court has wide discretion to set security to protect an enjoined party.  That discretion includes the authority "to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review."[111] Plaintiff is a non-profit corporation "focused on the promotion of subsistence uses on Alaska's North Slope, with no assets other than the [ROW]."[112]  Accordingly, the Court exercises its discretion to waive any bond as to this preliminary

---

[109] *Doe #1 v. Trump*, 957 F.3d 1050, 1069 (9th Cir. 2020) (holding that the public interest lied with maintaining the status quo).

[110] *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)).

[111] *People of State of Cal. ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985).

[112] Docket 21-1 at 46-47.

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 25 of 26

injunction.

## CONCLUSION

In light of the foregoing, Plaintiff's Motion for Preliminary Injunction at Docket 12 is GRANTED. IT IS ORDERED that the Department of Interior's December 19, 2025 decision captioned "Right of Way Cancellation" is hereby STAYED pending resolution of Plaintiff's underlying claims. The December 2024 Right of Way issued to Nuiqsut Trilateral, Inc. on those certain lands within the NPR-A shall remain in full force and effect during the pendency of this action.

DATED this 16th day of March, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:26-cv-00098-SLG, *Nuiqsut Trilateral, Inc. v. Burgum, et al*
Order on Motion for Preliminary Injunction
Page 26 of 26

Case 3:26-cv-00098-SLG    Document 42    Filed 03/16/26    Page 26 of 26