STEPHEN J. COX
ATTORNEY GENERAL

Mary Hunter Gramling, Alaska Bar No. 1011078
Ronald W. Opsahl, Alaska Bar No. 2108081
David W. Duffy, Alaska Bar No. 0605016
Assistant Attorneys General
State of Alaska, Department of Law
P.O. Box 110300
Juneau, AK  99811-0300
Telephone:  907-465-3600
Facsimile:  907-465-2520
Email: mary.gramling@alaska.gov
        ron.opsahl@alaska.gov
        david.duffy@alaska.gov
*Attorneys for the State of Alaska*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NUIQSUT TRILATERAL, INC. | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| DOUG BURGUM *et al.*, | ) |
| | ) |
| Defendants | )  Case No. 3:26-cv-00098-SLG |
| | ) |

## STATE OF ALASKA'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

The claims and relief that the Plaintiff seeks from this Court harms the State

of Alaska's sovereign rights over land and wildlife management, further stagnates

long-awaited valuable oil and gas exploration and leasing within the National

Petroleum Reserve – Alaska ("NPR-A" or "Petroleum Reserve"), and imperils the statutorily recognized, significant economic interests of Alaska and its residents statewide. Accordingly, Alaska requests to intervene.

Plaintiff Nuiqsut Trilateral ("NTI") challenges the United States Bureau of Land Management's ("BLM") December 19, 2025, decision ("Cancellation Decision") to recognize as void and terminate the "Teshekpuk Lake Conservation Right-of-Way" ("Unlawful Contract"). ECF No. 1 ("Compl.").

Alaska's intervention will aid the Court and the parties due to Alaska's unique roles and expertise. The claims and defenses in this matter overlap with an array of actions currently before this Court concerning the NPR-A that Alaska is involved in due to its interests in management of the Petroleum Reserve and the legal framework governing the Petroleum Reserve. Alaska is an intervenor-defendant in multiple cases involving the Petroleum Reserve, including Case Nos. 3:26-cv-0097-SLG (*Grandmothers Growing Goodness, et. al v. Burgum, et. al*; 3:20-cv-00290 (*SILA v. BLM*); 3:20-cv-00308-SLG (*Center for Biological Diversity v. BLM*); 3:20-cv-00058-SLG (*SILA v. BLM*); 3:20-cv-00206-SLG (*National Audubon Society v. U.S. Dept. of Interior*); 3:20-cv-00207 (*NAEC v. Burgum*). Alaska's roles and interests are expressly referenced in laws governing the Petroleum Reserve and Alaska has interests in participating in cases impacting interpretation of those statutes.

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*     Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum                                   Page 2 of 24
Case 3:26-cv-00098-SLG     Document 48-1     Filed 04/07/26     Page 2 of 24

Alaska's intervention should be granted. Alaska's motion is timely and intervention will not prejudice any party. No existing party can effectively represent Alaska's interests.

## I. BACKGROUND.

### A. The Petroleum Reserve and Production Act.

The Petroleum Reserve is a vast hydrocarbon-bearing area encompassing approximately 23 million acres that was initially established to secure a supply of oil for use by the United States Navy. *U.S. v. Alaska*, 521 U.S. 1, 39 (1997) (rejecting Alaska's assertions of ownership of certain submerged lands in the Petroleum Reserve in part because "the purpose of reserving in federal ownership all oil and gas deposits within the Reserve's boundaries would have been undermined if those deposits underlying lagoons and other tidally influenced waters had been excluded."). Thus, oil supply within the Petroleum Reserve has always been the prime purpose of the Petroleum Reserve. *Id.* at 41-42.

The Naval Petroleum Reserves Production Act, 42 U.S.C. §§6501-6508, ("the Production Act"), mandates that the federal government is required to pay to Alaska fifty percent of the revenues received from the Petroleum Reserve "sales, rentals, bonuses, and royalties on leases issued . . . ." 42 U.S.C. § 6506a(l)(1). A recent amendment to the Production Act provides for leases in the Petroleum Reserve issued after July 4, 2025, that the federal government is required to pay

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*     Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum                                    Page 3 of 24
Case 3:26-cv-00098-SLG     Document 48-1     Filed 04/07/26     Page 3 of 24

Alaska seventy percent of these revenues beginning in fiscal year 2034. Pub. L. 119-21, 139 Stat. 144, ("One Big Beautiful Bill Act"), § 50105(e). The One Big Beautiful Bill Act also instructed that leasing in the Petroleum Reserve be conducted according to the 2020 Integrated Activity Plan Record of Decision for the Petroleum Reserve. *Id*. at § 50105(b) &(d).

The federal government is required under the Production Act to consult with Alaska prior to any reduction or waiver of royalties or fees. 42 U.S.C. § 6506a(k). The Production Act further recognizes Alaska's role as a neighboring landowner because the Production Act requires consultation with Alaska on management of units containing State land. *Id*. § 6506a(j)(2).

**B.    Alaska's significant interests in the Petroleum Reserve.**

Alaska has sovereign interests and obligations that relate directly to the management and development of the Petroleum Reserve at issue in this case. Alaska has constitutionally mandated interests in encouraging the responsible development of natural resources within the State. The Alaska Constitution requires Alaska to manage resources for the maximum benefit and use by its people. Alaska Const., Art. VIII, §§ 1, 2. Alaska is also a neighboring landowner and land manager to the vast Petroleum Reserve located on Alaska's North Slope. Alaska Stat. §38.05. Alaska has long sought increased permanency and control in land determinations in the State. *See, Sturgeon v. Frost*, 587 U.S. 28, 34-39 (2019).

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*    Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum                                          Page 4 of 24
Case 3:26-cv-00098-SLG    Document 48-1    Filed 04/07/26    Page 4 of 24

Accordingly, actions in and access over the Petroleum Reserve impact neighboring state lands, state wildlife management, state subsistence programs, employment in the state, state tax revenues, energy supply, and overall resource development.

As a sovereign, Alaska has an interest in the health, welfare, and safety of its residents across the State. Alaska Const. Art. VII, §§ 4, 5. Wildlife is reserved to the people for common use, and must be "utilized, developed, and maintained on the sustained yield principle, subject to preferences among beneficial uses." Alaska Const. Art. VIII, §§ 3, 4. This includes Alaska's role in management of Teshekpuk Caribou Herd that travels across the boundaries of the Petroleum Reserve. Alaska's interests are directly implicated in the Cancellation Decision and Unlawful Contract.

Alaska's legislature and Governor have long sought increased exploration and activities in the Petroleum Reserve, including the Willow Project referenced in NTI's Complaint. Ex. E, Alaska Legislative Resolve 2, 2023; Ex. D, Governor's Transition Plan (requesting what became aspects of Executive Order 14153 "Unleashing Alaska's Extraordinary Resource Potential"). Recently, Alaska supported opening lands in the Petroleum Reserve to leasing. Ex. B at 3, November 21, 2025, Letter to BLM ("The State nominates all available lease sale tracts. We continue to offer resources and expertise to help BLM advance these lease sales and any future exploration and development that comes from these

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*     Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum                           Page 5 of 24
Case 3:26-cv-00098-SLG     Document 48-1     Filed 04/07/26     Page 5 of 24

lease sales."). The energy issues leading to the creation of the Petroleum Reserve and expedited leasing impetus of the Production Act are still present today. "Oil and gas development from both state-owned lands and federal lands across the North Slope of Alaska, including from within [the] Petroleum Reserve, contributes to energy security for [Alaska] and our Nation." Ex. A, Decl. of John Crowther at ¶9.

Alaska has an economic interest in revenues derived from leasing and production from the Petroleum Reserve. The Alaska Department of Revenue's most recent revenue forecast for fiscal year 2027 anticipated that Alaska would receive $10.8 million in revenues from the federal government from Petroleum Reserve oil without accounting for increased leasing activity from the One Big Beautiful Bill Act.[1] The Cancellation Decision and Unlawful Contract impact Alaska's rights to and timely receipt of rentals, royalty, and bonus, and consultation under the Production Act and One Big Beautiful Bill.

In the Alaska Statehood Act, Congress granted Alaska concurrent civil and criminal jurisdiction over federal lands within the Petroleum Reserve. Pub. L. No. 85-508, §11(b) (1958, as amended). Thus, Alaska also exercises taxing, police, and

---

[1]
https://tax.alaska.gov/programs/programs/reports/RSB.aspx?Year=2026&Type=Spring#program2024 (Chapter 2, Chart 2) (last accessed March 31, 2026).

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*     Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum     Page 6 of 24
Case 3:26-cv-00098-SLG     Document 48-1     Filed 04/07/26     Page 6 of 24

regulatory powers within the Petroleum Reserve. Alaska Stat. §§ 43.55 (oil and gas production tax); 43.56 (oil and gas and pipeline property tax); 43.20 (corporate income tax); 31.05.027 (jurisdiction of the Alaska Oil and Gas Conservation Commission); Pub. L. No.117-58, § 40601(b)(4) (requiring coordination and consultation with Alaska on orphaned wells within the Petroleum Reserve). Alaska also has responsibilities for connecting communities and helping sustain healthy subsistence communities near the Petroleum Reserve and statewide. Alaska Stat. § 19.05.125; 16 U.S.C.A. § 3170(b) (recognizing Alaska's right of access even in so called "conservation system units" or "wilderness study areas"). The Unlawful Contract and Cancellation Decision implicates Alaska's interest in all such authorities.

As noted above, Alaska is an intervenor-defendant in other current cases involving NPR-A decisions.[2] Alaska intervened in cases involving the Willow Project approval,[3] including the "Mitigation Measure 27" referenced in NTI's Complaint. Compl. at ¶ 14. In summary, Alaska has long sought increased and

---

[2]     Alaska was also the plaintiff in 3:24-cv-144-SLG (challenge to unlawful regulations for the Petroleum Reserve).
[3]     Case No: 3:20-cv-290-SLG, Dkt. 96; Case No. 3:20-cv-308-SLG, Dkt. 93, 3:23-cv-00058-SLG, Dkt. 45; Case No. 3:23-cv-00061-SLG, Dkt. 51. These are listed as related cases to this matter.

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*      Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum                                    Page 7 of 24
Case 3:26-cv-00098-SLG     Document 48-1     Filed 04/07/26     Page 7 of 24

timely responsible exploration and development in the Petroleum Reserve and devoted significant resources towards that end.

### C. The Unlawful Contract and the Cancellation Decision.

In 2023, BLM issued a record of decision ("2023 Willow ROD") approving ConocoPhillips' Willow Master Development Plan ("Willow Project") in the Petroleum Reserve. *Center for Biological Diversity v. U.S. Bureau of Land Management*, 141 F.4th 976, 989 (9th Cir. 2025). The 2023 Willow ROD included a multitude of mitigation measures. Mitigation Measure 27 from the 2023 Willow ROD under the "Requirement/Standard" heading stated that BLM

> "*will develop* compensatory mitigation that provides durable, long-term protection for the Teshekpuk Caribou Herd to fully offset impacts of the project on that Herd, to include protecting the surface area of Teshekpuk Lake, a buffer along all shores of the lake, and the K-10 Caribou Movement Corridors/K-16 Deferral Areas (under Alternative E in the 2020 National Petroleum Reserve in Alaska Integrated Activity Plan Final Environmental Impact Statement) *using existing statutory, management or administrative authorities, with a focus on restricting future leasing or surface development in those areas*." (emphasis supplied) Ex. F at 2.

Later in Mitigation Measure 27 in the section on "Potential Benefits and Residual Unavoidable Impacts", the ROD stated that "BLM *shall explore* creating a bi-lateral or multi-lateral conservation instrument to provide protections for the Herd and its key habitat for the duration of the Project's impacts." (emphasis added) Ex. F at 2. BLM in the ROD indicated that it would provide a "report" to

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*     Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum     Page 8 of 24
Case 3:26-cv-00098-SLG    Document 48-1    Filed 04/07/26    Page 8 of 24

include a "proposal for stakeholder engagement and implementation, if approved." *Id*. At most, BLM in Mitigation Measure 27 agreed to look at existing management and authorities and then report back. This Mitigation Measure with the "explore" and "if approved" language expressly contemplated that no "conservation instrument" would follow. *Id*.

Despite Alaska's status as a cooperating agency in the Willow Project approvals, sovereign status, and the engagement contemplated in Mitigation Measure 27, Alaska was not consulted on the Unlawful Contract. Ex. A, Decl. Crowther at ¶14. In a letter to the BLM Alaska Director, Alaska's Commissioner of Natural Resources explained that a conversation on December 9th, 2024 "was the first time" that his department had "been made aware of any specific potential [BLM] actions implementing the mitigation measure." Ex. C at 1. The letter requested identification of any specific authorization or instrument and how Alaska could be considered noting "we have not yet seen any application, notice, or process from the BLM on this proposal to date." *Id*. In the letter, Alaska "formally requests consideration to hold and manage any instrument or management tool related to mitigation measure 27 from the Willow ROD." *Id*. Alaska in the letter went on to explain its management of resources in the Petroleum Reserve, management of adjacent lands and waters, expertise, professional staff in wildlife biology, and transparent public management. *Id*. at 1-

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*    Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum    Page 9 of 24
Case 3:26-cv-00098-SLG    Document 48-1    Filed 04/07/26    Page 9 of 24

2. As expressed in the declaration of Alaska's Commissioner Designee for the Department of Natural Resources, BLM did not provide "any specific information about the terms or conditions of the purported "Right of Way" prior to issuance." Ex. A, Decl. Crowther at ¶15.

The Unlawful Contract appears to have been signed on December 17, 2024 by BLM's Alaska State Director and purported representatives of the Plaintiff. ECF No. 1-1 at 14. The Unlawful Contract purports its "grant" to cover "Protected Property" of over 1 million acres, an area larger than the State of Rhode Island. ECF No. 1-1 at 4. The duration of the "grant" is somehow linked to "reclamation" of the Willow Project, a project outside the Protected Area, and vague presumptions about impacts on caribou by the Willow Project. ECF No. 1-1 at 11. The Unlawful Contract declares as prohibited subject to the Plaintiff's waiver: issuance of new oil and gas leases, surface and subsurface exploration as well as the "transportation of oil or gas over or across", installation of utilities, and even facilities for use by local communities. ECF No. 1-1 at 6-8. Plaintiff's massive "grant" and "waiver" powers are without any consideration whatsoever since the "grant" for unknown duration has no rent for an area over one million acres. ECF No. 1-1 at 4. Despite the access to the area purportedly granted to the Plaintiff, no provision for financial assurances or insurance requirements appears in Unlawful Contract. ECF No. 1-2 at 4. The Unlawful Contract also purports that the Plaintiff

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*     Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum                                   Page 10 of 24
Case 3:26-cv-00098-SLG     Document 48-1     Filed 04/07/26     Page 10 of 24

"may transfer, assign, or delegate any of its rights and responsibilities under this Grant to a third party" with only a "requirement" and agreement from the third party that it carry out the purpose of the "Grant". ECF No. 1-1 at 10. All this without any requirement for approval of transfers by BLM.

On President Trump's first day in office in 2025, he issued an executive order instructing BLM to review for suspension and rescission nearly all decisions or guidance for the Petroleum Reserve by the prior administration. *See*, Executive Order 14153; Secretarial Order 3422. On December 19, 2025, BLM in the Cancellation Decision recognized as void and terminated the Unlawful Contract. ECF No. 1-2. The Cancellation Decision stated that the Production Act "does not authorize a ROW for a non-use" and the "Secretary has inherent authority, under his general managerial powers over public lands, to cancel authorizations issued in violation of law." *Id*. at 5. BLM reasonably recognized that the Production Act did not authorize the Unlawful Contract and that the Unlawful Contract "constitutes an improper delegation." *Id*. at 8.

## D.    NTI's Complaint.

NTI brings four claims seeking judicial review under the Administrative Procedures Act. Compl. at ¶¶ 98-122. NTI also alleges a procedural due process claim under the Fifth Amendment of the United States Constitution, asserting that NTI has a property interest in the Unlawful Contract and that it has been deprived

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*    Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum    Page 11 of 24
Case 3:26-cv-00098-SLG    Document 48-1    Filed 04/07/26    Page 11 of 24

without due process. Compl. at ¶¶ 122-127. For its procedural due process claim, NTI proclaims entitlement to both injunctive and declaratory relief. Compl. at ¶ 127. NTI further requests this Court declare the Cancellation Decision unconstitutional and unlawful; to vacate and set aside the Cancellation Decision; to award NTI reasonable attorney fees and costs; and for other relief as the Court may deem just and proper. Compl., Prayer for Relief at ¶ 1-4.

## II.     ALASKA IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

The Court considers four factors for intervention as a matter of right under Rule 24(a)(2): 1) the motion must be timely; 2) the movant must claim a protectable interest relating to the property or transaction that is the subject of the action; 3) the movant must show that the action may impair of impede the movant's ability to protect its interest; and 4) the movant must not be represented adequately by the parties already involved in the action. *Wilderness Soc. v. U.S Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011)(citing *Sierra Club v. U. S. Envtl. Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993), *abrogated on other grounds*). Further, Rule 24(a) is construed liberally in favor of potential intervenors and the Court's review is to be guided by practical considerations, rather than technical distinctions. *Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001).

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*     Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum                    Page 12 of 24
Case 3:26-cv-00098-SLG     Document 48-1     Filed 04/07/26     Page 12 of 24

### A.      Alaska's motion is timely.

The Ninth Circuit considers three factors when evaluating the timeliness of a motion to intervene: (1) the stage of the proceedings; (2) the prejudice to the other parties; and (3) the reason for and length of the delay. *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319 (9th Cir. 1997).

Alaska has timely requested to participate in this litigation. This litigation is in its initial stages. The Federal Defendants filed their Answer to the Complaint just a little over a week ago and the Administrative Record has not been filed. Alaska's participation will not upset the current scheduling order or briefing. Alaska's motion to intervene is timely and will not prejudice any of the parties or disrupt the orderly determination of the issues in this case.

### B.      Alaska has significantly protectable interests in this case.

Alaska's interests as a wildlife manager, neighboring landowner, regulator, and sovereign state are significant and numerous. Courts are to accept as true non-conclusory allegations made in support of an intervention motion. *Sw. Ctr. For Biological Diversity,* 268 F.3d at 819. To establish the requisite "protectable interest" sufficient to intervene as a right, the operative inquiry is whether the "interest [asserted] is protectable under some law" and whether "there is a relationship between the legally protected interest and the claims at issue." *Id.* at 818 (quoting *Sierra Club,* 995 F.2d at 1484). A prospective intervenor has

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*      Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum      Page 13 of 24
Case 3:26-cv-00098-SLG      Document 48-1      Filed 04/07/26      Page 13 of 24

sufficient interest for intervening purposes it will "suffer a practical impairment of its interests as a result of the pending litigation." *Id*. (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)).

In the Ninth Circuit, an applicant demonstrates a significantly protectable interest when "the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests." *Id*. (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc.,* 630 F.3d at 1177-1180). Further, the Ninth Circuit has held that a non-speculative, economic interest may be sufficient to support the right of intervention when the economic interest is "concrete and related to the underlying subject matter of the action." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919–920 (9th Cir. 2004).

Alaska's interests as a sovereign state, wildlife manager, regulator, and neighboring landowner are sufficient to claim an interest in the transaction in this matter for Federal Rule of Civil Procedure 24(a) and also would establish standing. Alaska has a significant interest in maintaining its legal role with regard to wildlife management, including caribou – which are under NTI's arguments implicated under Mitigation Measure 27, the Unlawful Contract, and the Cancellation Decision. Alaska is constitutionally required to manage wildlife within its borders and Plaintiff's claims impact Alaska's legal role and comprehensive management

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*     Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum                                    Page 14 of 24
Case 3:26-cv-00098-SLG     Document 48-1     Filed 04/07/26     Page 14 of 24

within and surrounding the Petroleum Reserve. *See* Ex. C, (December 16, 2024, Letter from DNR to BLM) ("Additionally, the State manages many resources within the proposed area (*i.e.* fish, wildlife, and water use/resources) and owns and manages adjacent lands and waters to the Petroleum Reserve-Alaska (NPR-A) and Teshekpuk Lake area. This would allow for coordinated management across Federal/State boundaries.").

In addition, Plaintiff's claims regarding BLM decisions to authorize leasing and activity within the Petroleum Reserve imperil Alaska's ability to receive Petroleum Reserve revenues from the federal government under 42 U.S.C. § 6506a(l)(1); Ex. A, Decl. of Crowther at ¶¶12, 16 (noting chilling effect and harms to Alaska's interests). A state's economic interest in revenues from federal leases is sufficient to support standing and therefore Alaska meets the lesser standard for intervention. *Org. Village of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 963-64 (9th Cir. 2015); *Watt v. Energy Action Education Found.*, 454 U.S. 151, 161 (1981) (finding California's direct financial stake in federal lease revenues from oil and gas and status as a neighboring landowner supported standing). Moreover, the lack of rental, financial assurances, and consultation in the Unlawful Contract and the relief requested by the Plaintiff here further injure Alaska's economic and sovereign interests.

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*    Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum    Page 15 of 24
Case 3:26-cv-00098-SLG   Document 48-1   Filed 04/07/26   Page 15 of 24

As a sovereign, Alaska also has significant interests in promoting the health, safety, and welfare of its citizens. Moreover, Alaska has a constitutional directive to assist local governments. Alaska Const. Art. X, § 14. Revenues from the Petroleum Reserve that are imperiled by this litigation are part of how Alaska assists local governments. Alaska as a taxing authority receives revenues from oil and gas production taxes, property taxes, corporate income taxes, and other revenues that follow from the business activities supporting oil and gas exploration and development that are at risk due to delay and the chill of investments that follow from halted exploration and leasing from Plaintiff's claims. Alaska Stat. §§ 43.55 (oil and gas production taxes); 43.56 (oil, gas, and pipeline property tax); 43.20 (corporate income tax); *see*, *Wyoming v. Oklahoma*, 502 U.S. 437, 450 (1992) (granting standing to Wyoming due to an Oklahoma act that would impact coal severance tax revenues in Wyoming).

Alaska also has a duty to promote economic development within its borders, including making available economic opportunities for its citizens. *See* Alaska Stat. § 44.33.020(a)(30)-(35). The Cancellation Decision allows for increased economic activity and associated jobs for State residents that Plaintiff's claims could delay or impair. This includes potential impairment of access to oil and gas or other energy projects on neighboring state lands that may be entirely unrelated

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*     Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum                               Page 16 of 24
Case 3:26-cv-00098-SLG     Document 48-1     Filed 04/07/26     Page 16 of 24

to Willow Project and alleged impacts to resources that the Unlawful Contract purports to mitigate.

### C. Absent intervention, Alaska's ability to protect its significant interests would be impaired.

Disposition of this case could impair Alaska's interests. The third prong of the four-part test for intervention addresses impairment, which "follows from the factors" related to an applicant's protectable interests. *Sierra Club*, 995 F.2d at 1486. Rule 24 refers to impairment "as a practical matter" and courts are not limited to the "consequences of a strictly legal nature." *Forest Conservation Council*, 66 F.3d at 1498 (citing *Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)) ("the question of impairment is not separate from the question of existence of an interest.").

Here, Plaintiff's Complaint impairs Alaska's practical interest in full and competitive leasing on the North Slope. Ex. B. Alaska reiterated its interest in Petroleum Reserve leasing to BLM by calling for leases be issued either in the next available sale, or through a "phased approach" because it:

> Maximizes resource and revenue potential within the NPR-A; Maximizes royalty and tax revenue for the Federal government, the State, the North Slope Borough and many other regional and local stakeholders of the NPR-A; Allows the private sector to evaluate all potential areas rather than preemptively foreclosing areas; Supports the markets determination of what tracts should be leased and which ones are not viable; Preserves the ability to do area and site-specific reviews, approvals, and mitigation while

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*     Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum                          Page 17 of 24
Case 3:26-cv-00098-SLG     Document 48-1     Filed 04/07/26     Page 17 of 24

maximizing exploration potential; Has no affect in areas that are available but ultimately unleased; and Is the most consistent with the applicable EO and SO. Ex. B at 1-2 (reformatted from bullet points)[4]

Just the filing of this case itself may delay and diminish the competitiveness of leases in the Petroleum Reserve and result in diminished interest by industry. Ex. A. This would negatively impact Alaska's economic interests in bonus bids, rentals, and royalties due to Alaska. The Cancellation Decision supports further exploration and leasing in the Petroleum Reserve, which will help inform responsible development of leases in the Petroleum Reserve and neighboring state lands. The Cancellation Decision also involves interpretation of the Production Act, which is also at issue in other cases that Alaska is a party; and thus, this case may impair Alaska's interests in those proceedings.

Alaska as a sovereign has an interest in the terms under which it participates in the federal system that supports intervention in this case. *See*, *Massachusetts v. U.S. EPA*, 549 U.S. 497, 519-20 (2007). Alaska's interests are repeatedly acknowledged in the Production Act and Alaska has consistently participated in reviews and litigation concerning interpretation and implementation of the Production Act.

---

[4] *See* Executive Order (EO) 141153, Secretary's Order (SO) 3422, for "Unleashing Alaska's Extraordinary Resource Potential."

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*  Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum  Page 18 of 24
Case 3:26-cv-00098-SLG  Document 48-1  Filed 04/07/26  Page 18 of 24

More specifically to this case, Alaska was a cooperating agency in the Willow Project reviews that ultimately bore Mitigation Measure 27 purported at issue in this case. Prior to BLM's issuance of the Unlawful Contract to NTI – which occurred without Alaska's input – Alaska sought to be involved in any process to implement Mitigation Measure 27. Ex. C; Ex. A. Those efforts were frustrated by the former BLM administration, and the issuance of the Unlawful Contract harms Alaska's interests in the Petroleum Reserve. While Alaska agrees with the result of the Cancellation Decision and BLM's ongoing efforts to open responsible leasing in the Petroleum Reserve, Alaska has long-sought greater cooperation and coordination with local communities and on resource management issues – particularly subsistence. *See* Ex. B at 2 ("The State of Alaska has a long history of safe responsible resource development on the North Slope, while protecting valued resources and subsistence values."). The Cancellation Decision supports Alaska's interests and the Unlawful Contract does not. The Unlawful Contract impedes access in the Petroleum Reserve and potentially to neighboring state lands and also impedes coordination of land and wildlife management. Alaska clearly meets the third element for intervention on multiple fronts.

**D.    Alaska's interests are not represented by existing parties.**

Under the fourth prong for intervention of right, the proposed intervenor must show that its interests will not be adequately protected by the existing parties.

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*    Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum                              Page 19 of 24
Case 3:26-cv-00098-SLG    Document 48-1    Filed 04/07/26    Page 19 of 24

The burden under this prong is "minimal" –  meaning a party seeking to intervene need only show that representation of its interests "may be inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). To determine whether an applicant's interest is adequately represented by existing parties, the Ninth Circuit considers "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996) (*citing California v. Tahoe Regional Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986)).

The objectives and interests of Alaska are not identical to those of any existing party to this action, nor are these differences merely minor differences of opinion. While the Federal Defendants are to consider public interest factors in decision-making, the Federal Defendants' arguments or litigation focus may not align with the interests of Alaska as representative of its own interests, lands, and citizens. First and foremost, Alaska has a unique sovereign interest in encouraging the development of natural resources within the State for the maximum benefit of its people. Alaska Const., Art. VIII §§ 1, 2. Federal Defendants share no such constitutional duty with respect to Alaska's natural resources or residents.

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*     Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum                          Page 20 of 24
Case 3:26-cv-00098-SLG     Document 48-1     Filed 04/07/26     Page 20 of 24

Courts have recognized that a differing weight afforded interests, different financial interests, sovereign interests in resources, and potential different litigation strategies may be reasons that the federal government cannot adequately represent Alaska. *See, e.g.*, *Earthworks v. U.S. Dep't of Interior*, 2010 WL 3063143, *2 (D.D.C. 2010) ("Alaska's interests in the natural resources within state borders and the economic effects on the state of mining regulation are not necessarily represented by federal agencies or private companies."). Those differences are all present here therefore no other party can adequately represent Alaska's interests.

As oil and gas revenues are a major revenue source for Alaska, Alaska's economic interest is, from a relative standpoint, greater than the economic interests of the Federal Defendants in the Petroleum Reserve. More importantly, Alaska cannot rely on the Federal Defendants to advance the same arguments Alaska would make. Differing resources, policy values, and relative economic interests may mean that the Federal Defendants may not advocate in defense as Alaska would wish. Additionally, Alaska has been a party to other cases where federal government defendants have flipped positions mid-litigation or failed to defend at all. *Organized Village of Kake*, 795 F.3d at 963. While Alaska agrees with the conclusion in the Cancellation Decision that the Unlawful Contract was void *ab initio*, Alaska may argue that the relief requested by the Plaintiff is unlawful and inequitable for additional reasons than the Federal Defendants. ECF No. 1-2 at 8.

Alaska may emphasize or argue elements not considered or focused on by the Federal Defendants. For another example, Alaska would likely address any of NTI's arguments based on prior unlawful NPR-A regulations differently than the Federal Defendants given Alaska's prior challenge to those regulations. Thus, representation of Alaska's interest by any other party in this litigation would be inadequate, and intervention should be granted.

## III. ALTERNATIVELY, ALASKA SATISFIES THE REQUIREMENTS FOR PERMISSIVE INTERVENTION.

Alaska believes it is entitled to intervene in this case as a matter of right. However, should the Court determine otherwise, Alaska should be permitted to intervene under Fed. R. Civ. P. 24(b)(2). All that is necessary for permissive intervention is that intervenor's "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Rule 24(b) plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." Fed. R. Civ. P 24(b); S*ec. & Exch. Comm'n v. U.S. Realty & Improvement Co*., 310 U.S. 434, 459 (1940); *accord*, *Emp. Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994).

Alaska, by virtue of its statutory and constitutional responsibilities and the other matters described above, holds claims and defenses in common with questions of law and fact raised by Plaintiff's Complaint. Rule 24(b) also requires

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*     Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum     Page 22 of 24
Case 3:26-cv-00098-SLG     Document 48-1     Filed 04/07/26     Page 22 of 24

the Court to consider whether permissive intervention would cause undue delay or would prejudice adjudication of the rights of the original parties. As noted above, Alaska's motion is timely and will not delay or prejudice resolution of the case.

## IV. CONCLUSION

Alaska's intervention will benefit the Court in considering the Cancellation Decision, Unlawful Contract, and various public interests at stake in this case. Alaska requests the Court grant it leave to intervene in this case as a matter of right, or, in the alternative, permissive intervention.

DATED: April 7, 2026.

STEPHEN J. COX
ATTORNEY GENERAL

By: */s/Mary Hunter Gramling*
    Mary Hunter Gramling
    Alaska Bar No. 1011078
    State of Alaska
    Department of Law
    P.O. Box 110300
    Juneau, AK 99811-0300
    Telephone: (907) 465-3600
    Facsimile: (907) 465-2520
    Email: mary.gramling@alaska.gov
    Attorney for the State of Alaska

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*      Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum      Page 23 of 24
Case 3:26-cv-00098-SLG    Document 48-1    Filed 04/07/26    Page 23 of 24

<h1 style="text-align:center"><u>CERTIFICATE OF COMPLIANCE</u></h1>

This document contains 4899 words, excluding items exempted by Local Civil Rule 7.4(a)(4). Counsel relies on the word count of the computer program used to prepare this document. The document complies with the word limit of Local Rule 7.4(2).

*/s/ Mary Hunter Gramling*
Mary Hunter Gramling

<h1 style="text-align:center"><u>CERTIFICATE OF SERVICE</u></h1>

I hereby certify that on April 7, 2026, a true and correct copy of the foregoing was served on all registered parties via the CM/ECF system.

*/s/ Mary Hunter Gramling*
Mary Hunter Gramling

*Nuiqsut Trilateral, Inc. v. Doug Burgum, et al.*     Case No. 3:26-cv-00098-SLG
State of Alaska's Memorandum                           Page 24 of 24
Case 3:26-cv-00098-SLG     Document 48-1     Filed 04/07/26     Page 24 of 24